# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,        )
                    )
       Plaintiff,        )
                    )
        v.           )    Civil Case No. 13-01344 (RJL)
                    )
UNITED STATES DEPARTMENT  )
OF JUSTICE,             )
                    )
       Defendant.     )

**FILED**

**AUG 2 2 2014**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(August 22, 2014) [Dkt. ##15, 17]

Plaintiff Judicial Watch ("plaintiff") filed this action against the United States Department of Justice ("defendant" or "DOJ") on September 5, 2013, challenging DOJ's denial of plaintiff's request for records pursuant to the Freedom of Information Act, 5 U.S.C. § 552. *See* Complaint ("Compl.") [Dkt. #1]. Now before the Court are the parties' cross-motions for summary judgment. *See* Defendant's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. #15]; Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot.") [Dkt. #17]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Cross-Motion for Summary Judgment.

1

## BACKGROUND

This case involves a challenge to defendant's denial of plaintiff's request for documents pursuant to the Freedom of Information Act ("FOIA"). *See* Compl. ¶¶ 5-6. In August 2012, the House Committee on Oversight and Government Reform ("House Committee") sued Attorney General Eric Holder to enforce a congressional subpoena for documents related to the Bureau of Alcohol, Tobacco, Firearms and Explosives "Fast and Furious" operation. *See* Def.'s Mot. at 1; Pl.'s Mot. at 2; *Comm. on Oversight and Gov't Reform v. Holder*, No. 12-1332-ABJ (D.D.C. filed Aug. 13, 2012) ("*Holder*"). Although the litigation is ongoing, DOJ and the House Committee have endeavored to resolve the subpoena dispute out of court. *See* Def.'s Mot. at 1; Pl.'s Mot. at 2. As of the writing of this Opinion, settlement discussions remain ongoing, and have included at least three court-ordered mediation sessions. *See* Defendant's Statement of Material Facts Not in Dispute ("Def.'s Facts") ¶ 13 [Dkt. #15-2]; Plaintiff's Statement of Undisputed Material Facts ("Pl.'s Facts") ¶ 13 [Dkt. #16].

### A.    Procedural History in *Holder*

Within months of the complaint in *Holder*, the parties began discussing the possibility of resolving the case outside of litigation. The parties met in early December 2012 and then exchanged correspondence in late December and early January 2013 regarding potential settlement of the case. *See* 1/7/2013 Joint Status Report at 4-5, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 32. During a January 10, 2013 status

conference before Judge Amy Berman Jackson, Judge Jackson indicated that she did not want the substance of the parties' settlement discussions made public. *See* Tr. of 1/10/2013 Status Conf. at 8:16, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 39 ("I don't know what you said [in settlement communications]. I don't want to know."). The parties continued their settlement negotiations, exchanging more letters and draft settlement agreements. *See* 3/15/2013 Joint Status Report at 1-2, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 40.

On March 15, 2013, in an effort to speed up the pace of negotiations, DOJ requested that Judge Jackson refer the case to Visiting Senior Judge Barbara Rothstein[1] for mediation. *See id.* at 4; *see also* 3/18/2013 Order at 1, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 41. Pursuant to an order from Judge Rothstein, the parties submitted memoranda "outlining the current status of the case, including a summary of . . . the settlement history to date, including a summary of any issues that prevented settlement," prior to commencement of the first mediation session. *See* 3/18/2013 Minute Order, *Holder*, No. 12-cv-1332 (D.D.C. 2012). DOJ's memorandum contained substantive summaries of the parties' settlement negotiations and attached copies of two letters and two draft settlement agreements exchanged by the parties. *See* Def.'s Facts

---

[1] Judge Barbara Rothstein was appointed a United States District Judge for the Western District of Washington on February 20, 1980. From 2003 to 2011, she served as the Director of the Federal Judicial Center in Washington, DC. On September 1, 2011, she took senior status and shortly thereafter became a Visiting Senior Judge in the United States District Court for the District of Columbia.

¶ 12; Declaration of John Tyler ("Tyler Decl.") ¶ 5 [Dkt. #15-4].    Following the

conclusion of the first mediation session on April 22, 2013—with the parties failing to

reach a settlement—Judge Jackson ordered the parties back to mediation on October 30,

2013, and again on January 15, 2014. *See* 10/30/2013 Minute Order, *Holder*, No.

12-cv-1332 (D.D.C. 2012); 1/15/2014 Minute Order, *Holder*, No. 12-cv-1332 (D.D.C.

2012).

## B.    Plaintiff's FOIA Request

On March 20, 2013, plaintiff submitted a FOIA request to the Civil Division of the

DOJ seeking documents related to settlement discussions in *Holder*. *See* at Def.'s Facts

¶¶ 1-2; Pl.'s Facts ¶¶ 1-2.    Specifically, the request sought

> Any and all records of communications, correspondence, and contacts
> between the Department of Justice and the House Committee on Oversight
> and Government Reform concerning or relating to a settlement in
> *Committee on Oversight and Government Reform v. Holder*,
> 1:12-cv-01332, U.S. District Court, District of Columbia (Washington).
> Such records include, but are not limited to, records of the settlement
> discussions themselves.

Declaration of James M. Kovakas ("Kovakas Decl."), Ex. A [Dkt. #15-3]; *see also* Def.'s

Facts ¶ 2; Pl.'s Facts ¶ 2.    The time period covered by the request was October 1, 2012 to

March 20, 2013. *See* Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2; Kovakas Decl., Ex. A.

DOJ identified and contacted ten Civil Division attorneys and one staff member

who were likely to have records responsive to the request. *See* Def.'s Facts ¶ 4; Kovakas

Decl. ¶ 4.    Following searches of the attorneys' and staff member's records, DOJ was

able to locate eight responsive documents—32 pages in total—consisting of communications related to potential settlement between DOJ and the House Committee. *See* Def.'s Facts ¶ 4; Kovakas Decl. ¶ 5. In a letter dated May 3, 2013, DOJ informed plaintiff that "[a]ll of the information responsive to your request is withheld in full." *See* Kovakas Decl., Ex. C; Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5. DOJ explained that it was withholding all internal communications pursuant to 5 U.S.C. § 552(b)(5) and all external communications pursuant to "court-imposed non-disclosure requirements." *See* Def.'s Facts ¶ 5; Pl.'s Facts ¶ 5; Kovakas Decl., Ex. C.

Defendant appealed DOJ's determination on May 20, 2013, clarifying that its FOIA request did not seek disclosure of any internal DOJ communications. *See* Def.'s Facts ¶ 6; Pl.'s Facts ¶ 6; Kovakas Decl., Ex. D. On June 19, 2013, DOJ's Office of Information Policy affirmed the Civil Division's determination, informing plaintiff that "the records responsive to your request are subject to court-imposed, non-disclosure requirements under the Local Rules of the United States District Court for the District of Columbia." *See* Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7; Kovakas Decl., Ex. E.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating

cross-motions for summary judgment, "the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp.–Bloomington, Inc. v. Sebelius*, 774 F. Supp. 2d 332, 338 (D.D.C. 2011) (citation omitted). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Although FOIA generally favors agency disclosure of responsive documents, an agency is entitled to summary judgment on a FOIA claim where it shows that the documents withheld are "wholly exempt from the Act's inspection requirements." *Exxon Corp. v. FTC*, 663 F.2d 120, 126 (D.C. Cir. 1980) (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973). Moreover, agency records that are subject to a court order or rule preventing their public disclosure are properly withheld under FOIA. *See GTE Sylvania, Inc. v. Consumers Union of the U.S.*, 445 U.S. 375, 387 (1980). The court reviews the agency's justification for withholding responsive documents *de novo*. *See Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003). In determining whether responsive documents were properly withheld, the court "shall accord substantial weight to an affidavit of an agency concerning the agency's determination," so long as the affidavit is relatively detailed, demonstrates that the

6

documents are logically withheld, and is submitted in good faith. 5 U.S.C. §

552(a)(4)(B); *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).

## ANALYSIS

This case requires a determination as to whether documents responsive to

plaintiff's FOIA request were improperly withheld. Indeed, the FOIA statute only

confers jurisdiction on this Court to compel the production of agency documents that are

"improperly withheld." *GTE Sylvania*, 445 U.S. at 384; *see also* 5 U.S.C. §

552(a)(4)(B). When there is "no discretion for the agency to exercise," the withholding

of responsive documents cannot be said to be improper. *GTE Sylvania*, 445 U.S. at 386.

Here, there appear to be two applicable bars to the production of responsive documents:

Judge Jackson's admonition that the parties not disclose the substance of their settlement

communications, and the prohibition on disclosure of communications "made in

connection with or during any mediation session" contained in Local Rule 84.9. *See* Tr.

of 1/10/2013 Status Conf. at 8:16, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 39;

LCvR 84.9(a)(1). Defendant argues that because it is prevented from disclosing the

responsive documents by "court-imposed non-disclosure requirements," it lacks any

discretion regarding the documents' production, and thus its withholding of the

documents is not improper. Kovakas Decl., Ex. C; *see also* Def.'s Mot. at 9. I agree.

D.C. Local Rule 84.9 states that the District Court "prohibits the mediator, all

counsel and parties and any other persons attending the mediation from disclosing any written or oral communications made in connection with or during any mediation session." LCvR 84.9(a)(1). Plaintiff argues, however, that because the responsive documents were created *before* the parties were formally ordered into mediation by Judge Jackson, Local Rule 84.9 does not apply. *See* Pl.'s Mot. at 3-4. Unfortunately for the plaintiff, its narrow interpretation of Local Rule 84.9 is inconsistent with the broad protections this District Court provides for confidential settlement discussions between parties. *See Bradshaw v. Vilsack*, 286 F.R.D. 133, 139-40 (D.D.C. 2012) (PLF); *Davis v. Nat'l Council of Negro Women, Inc.*, 821 F. Supp. 2d 262, 266 (D.D.C. 2011) (RCL) (striking portions of summary judgment motion containing references to the mediation process as a "flagrant violation of [Local Rule 84.9]"); *see also Black v. Kendig*, 227 F. Supp. 2d 153, 155 (D.D.C. 2002) (JMF) ("I yield to no one in my insistence that settlement discussions remain confidential . . . [and] will not permit either party to refer in any way to anything anyone, including me, said during settlement discussions.") (citing *Childers v. Slater*, No. 97-853-JMF, 1998 WL 429849, at *6 (D.D.C. 1998)). Indeed, the prohibition of disclosure of settlement-related communications contained in Local Rule 84.9 has been applied to negotiations occurring outside of the Court's formal mediation program. *See Bradshaw*, 286 F.R.D. at 139-40 (applying LCvR 84.9 in striking "characterizations of statements made during court-ordered mediation sessions *and related settlement discussions between the parties*" (emphasis added)).

8

The settlement discussions between the parties in this case occurred amidst numerous inquiries from Judge Jackson regarding the necessity of referring the case to formal mediation, should the parties fail to reach a resolution on their own. *See* Def.'s Mot., Ex. C at 8:13-9:10 [Dkt. #15-7]; Tr. of 1/10/2013 Status Conf. at 11:14-20, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 39. Moreover, the substance of these confidential settlement communications—including actual communications and draft settlement agreements—were submitted to the Visiting Senior District Judge and became the starting point from which the mediation sessions before Judge Rothstein proceeded. *See* Tyler Decl. ¶ 5. To say the least, it strains credulity for plaintiff to argue that these communications were not "made in connection" with mediation, given that the parties were strongly encouraged to engage in settlement discussions, and were reminded that court-ordered mediation might be ordered at any time. *See* Def.'s Mot., Ex. C at 8:13-9:10; Tr. of 1/10/2013 Status Conf. at 11:14-20, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 39. As is the case with formal court-ordered mediation, disclosure of sensitive—yet informal—settlement communications between parties would have a chilling effect on settlement negotiations and would be inconsistent with the core purpose of Local Rule 84.9—to promote resolution of civil disputes short of litigation. Plaintiff's narrow interpretation of Local Rule 84.9's applicability is simply inconsistent with both the case law and the purpose of the Rule.

Even assuming, *arguendo*, that Local Rule 84.9 does not apply, however, DOJ did

not abuse its discretion in refusing to disclose the responsive settlement communications because it was honoring a court-imposed restriction, and thus there "simply [was] no discretion for the agency to exercise." *GTE Sylvania*, 445 U.S. at 386. According to the reasoning in *GTE Sylvania*, "the proper test for determining whether an agency improperly withholds records [subject to a court-imposed restriction] is whether the [restriction], like an injunction, *prohibits* the agency from disclosing the records." *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991) (emphasis in original). In order to establish that a valid court-imposed restriction was in place, the plaintiff may refer to: (1) an explicit order from the court; (2) extrinsic evidence; (3) orders from the same court in similar circumstances; and (4) the court's general rules or procedures. *See id.* at 198.

Here, we have an *explicit* statement from Judge Jackson instructing the parties to keep the substance of their settlement discussions private, *see* Tr. of 1/10/2013 Status Conf. at 8:16, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 39, extrinsic evidence that the parties believed there was a court-imposed restriction prohibiting the disclosure of the substance of their settlement negotiations, *see* 1/7/2013 Joint Status Report at 4-5, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 32 (omitting substance of settlement discussions); 3/15/2013 Joint Status Report at 3, *Holder*, No. 12-cv-1332 (D.D.C. 2012), ECF No. 40 (noting that "[c]onsistent with this Court's prior instructions, Defendant will not delve into the specific substance of the parties' confidential settlement offers"), and a

court rule prohibiting the disclosure of "any written or oral communications made in connection with or during any mediation session," LCvR 84.9(a)(1). Based on the above, there can be no doubt that there was a valid court-imposed restriction prohibiting disclosure of confidential settlement communications between the parties. The defendant had no discretion to produce the responsive documents, and therefore, the withholding of those documents was clearly proper.

## CONCLUSION

Accordingly, for all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Cross-Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge