UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC., )
)
    Plaintiff, )
)
v. ) Civil Case No. 13-1344 (RJL)
)
U.S. DEPARTMENT OF JUSTICE, )
)
    Defendant. )

**MEMORANDUM OPINION**
(September 24, 2017) [Dkts. ##31, 33]

FILED
SEP 25 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Judicial Watch seeks disclosure by the Department of Justice ("Department") of records pertaining to settlement discussions between the Department and the House Committee on Oversight and Government Reform ("Committee") in separate litigation between those entities. The case is here on remand from our Circuit. Before the Court are the Department's Second Motion for Summary Judgment [Dkt. #31] and Judicial Watch's Cross-Motion for Summary Judgment [Dkt. #33]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Court will GRANT the Department's motion and DENY Judicial Watch's cross-motion.

## BACKGROUND

When this case was last before me, I ruled that Judicial Watch was not entitled to the disclosure of eight settlement-related documents prepared in connection with another case, *Committee on Oversight and Government Reform v. Holder*, 1:12-cv-01332 (D.D.C.)

("*Holder*").[1] In that case, filed August 2012, the House Committee on Oversight and Government Reform sought to enforce a subpoena of certain documents related to the controversial "Fast and Furious" operation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives, a component of the Department. The parties attempted to settle. As part of those efforts, they exchanged six letters and two draft settlement agreements. Ultimately, they were unable to reach a settlement, and in a final judgment entered on February 8, 2016, my colleague, Judge Amy Berman Jackson, ordered the Attorney General to release some, but not all, of the "Fast and Furious" documents sought by the Committee. The Committee appealed. *See Comm. on Oversight and Gov't Reform v. Sessions*, No. 16-5078 (D.C. Cir.).

This case is not about the "Fast and Furious" documents that were the subject of *Holder* and the Committee's appeal. Rather, it involves an attempt by Judicial Watch, a third party, to obtain the six letters and two draft settlement agreements created and exchanged by the Department and the Committee during their settlement negotiations. To evaluate Judicial Watch's claims, it is necessary to begin by reviewing the context in which these eight documents were created. Not long after *Holder* was filed, Judge Jackson entered a minute order setting an initial status conference and informing the parties to be prepared to discuss at that conference the matters listed in Local Civil Rule 16.3(c).[2] At

---

[1] Attorney General Loretta Lynch was substituted for former Attorney General Eric Holder in 2015. *See* Fed. R. Civ. P. 25(d). As the relevant events occurred prior to that substitution, and for consistency with prior opinions issued in this matter, the Court will continue to refer to the case as "*Holder*."

[2] The rule instructs parties to assess, *inter alia*, "[w]hether there is a realistic possibility of settling the case," LCvR 16.3(c)(4), "[w]hether the case could benefit from the Court's alternative dispute resolution (ADR) procedures . . . [, and] what related steps should be taken to facilitate such ADR," LCvR 16.3(c)(5).

the initial conference, Judge Jackson inquired whether "the parties [were] engaged in any effort at this time to work this matter out." *See* Def.'s First Mot. Summ. J. ("Def.'s First Mot."), Ex. C, Tr. of 11/27/12 Status Conf. 8:15–17 [Dkt. #15-7]. She informed the parties that Senior District Judge Barbara Rothstein[3] was prepared to serve as a mediator. *Id.* at 9:6–10. She then said:

> The next question I was going to ask you was is there any reason that I shouldn't order you to go do [mediation], but if you're [planning on] meeting with each other already, then I don't think I need to order you to go do that, but I will invite you that if after you meet, you feel that that will be beneficial or if you'd rather work with a magistrate judge or the court's mediation program, if you notify chambers, we will order that promptly. . . . If you want it, you just need to notify chambers and the order will issue.

*Id.* at 9:11–17, 10:5–6.

The parties met on December 7, 2012, approximately one week after the initial status conference. Def.'s First Mot., Ex. A, Joint Status Report 4 [Dkt. #15-5]. Over the next four weeks, they exchanged letters outlining their settlement positions. *Id.* at 5. No agreement was reached, and, on January 10, 2013, they again appeared before Judge Jackson for a status conference. At this conference, Judge Jackson again asked whether it was time to order the parties into mediation. *See* Def.'s First Mot., Ex. D, Tr. of 1/10/13 Status Conf. 8:2–9:2 [Dkt. #15-8]. Although the Department believed court-ordered mediation was "premature" and the Committee expected "it would be largely a waste of time," *id.* at 9:12, 10:1, Judge Jackson warned the parties she was "still going to consider whether . . . to order it anyway," *id.* at 11:14–15. She also stated that she would "like the

---

[3] Judge Rothstein, at that time, was a visiting Senior District Judge from the Western District of Washington who had a chambers in our courthouse.

process [of settlement negotiations] to speed up": "[I]f it takes three weeks to respond to their letter again, then we're not going to get anywhere." *Id.* at 10:12, 11:1–3. Finally, Judge Jackson stated that she did not know and did not want to know what the parties had said in their negotiations to date. *See id.* at 8:16.

Following the second status conference, the parties exchanged four more letters concerning their settlement positions. Def.'s Statement Mat. Facts ¶ 12 ("Def.'s SMF") [Dkt. #15-2]; Def.'s First Mot., Ex. B, Second Joint Status Report 1–2 [Dkt. #15-6]. They also exchanged draft settlement agreements. Def.'s SMF ¶ 12; Second Joint Status Report 1–2. Following those exchanges, the Department informed Judge Jackson that it would like to "accept the Court's offer of mediation before Judge Rothstein." Second Joint Status Report 3. The Committee stated mediation "would be a waste of everyone's time." *Id.* at 2. On March 18, 2013, Judge Jackson ordered the parties into mediation with Senior Judge Rothstein. Def.'s First Mot., Ex. E, Order [Dkt. #15-9]; Pl.'s Statement Mat. Facts ¶ 4 ("Pl.'s SMF") [Dkt. #33].

Two days later, Judicial Watch filed a FOIA request with the Department seeking "[a]ny and all records of communications, correspondence, and contacts between the Department of Justice and the House Committee on Oversight and Government Reform concerning or relating to a settlement in [*Holder*]." Decl. James M. Kovakas ¶ 2 ("Kovakas Decl.") [Dkt. #15-3]; Pl.'s SMF ¶ 2. The Department located eight documents responsive to this request—the two letters exchanged after the first status conference, the four letters exchanged after the second status conference, and the proposed settlement agreements drafted by each party—but refused to release them on the ground that they were "subject

4

to court-imposed[] non-disclosure requirements." Kovakas Decl. ¶ 8; Pl.'s SMF ¶ 7. Judicial Watch filed this lawsuit, the parties cross-moved for summary judgment, and I ruled in favor of the Department. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 65 F. Supp. 3d 50, 55 (D.D.C. 2014) ("*Judicial Watch I*").

My decision was based on two grounds. First, I held that the eight responsive documents were protected by Local Civil Rule 84.9, which "prohibits the mediator, all counsel and parties and any other persons attending the mediation from disclosing any written or oral communications made in connection with or during any mediation session." *Judicial Watch I*, 65 F. Supp. 3d at 55 (quoting LCvR 84.9(a)(1)). Second, I held that even if the documents did not come within the protection of Local Civil Rule 84.9, they were protected by court order because Judge Jackson had "instruct[ed] the parties to keep the substance of their settlement discussions private." *Id.* at 56 (citing Tr. of 1/10/2013 Status Conf. 8:16) ("I don't know what you said [in settlement communications]. I don't want to know."). Judicial Watch appealed.

Our Circuit found that my interpretation of Local Civil Rule 84.9 "presents difficult questions." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 813 F.3d 380, 384 (D.C. Cir. 2016) ("*Judicial Watch II*"). "On the one hand, a district court's interpretation of its own rules is, as the Department argues, entitled to deference." *Id.* (citing *Texas v. United States*, 798 F.3d 1108, 1115 n.2 (D.C. Cir. 2015) ("Every circuit . . . defers to their district courts' interpretation . . . of local rules. The federal court system could not fairly function otherwise." (citations omitted)). "On the other hand, Local Rule 84(b) explicitly provides that '[t]hese Rules apply only to mediation proceedings that are formally conducted

5

through the United States District Court's Mediation Program.'" *Id.* (quoting LCvR 84(b)). "Further, it is not established whether Local Rule 84.9, if it applies, would resolve the FOIA question because local rules do not clearly fit within a recognized FOIA exemption." *Id.*

Rather than confront these "difficult questions," our Circuit determined that it should begin by reviewing Judge Jackson's order. It recited the four-factor test for determining whether an agency has improperly withheld records placed under seal by a court, *see Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991), then concluded that under this test "the intended effect of Judge Jackson's order is ambiguous," *Judicial Watch II*, 813 F.3d at 383. Because "[a]n ambiguous court order does not protect a record from disclosure pursuant to the FOIA," *id.* at 383–84, the court determined that it should "vacate the judgment of the district court and remand this matter to Judge Leon in order to give the Department an opportunity to seek clarification from Judge Jackson regarding the intended effect and scope of her order," *id.* at 384. The court observed that, depending on the results of the clarification, resolution of the questions presented by my interpretation of Local Civil Rule 84.9 "may be unnecessary." *Id.* at 385.

On motion from the Department following remand, Judge Jackson clarified that her "statement – which bears none of the earmarks of an order – does not address the confidentiality of any ongoing or future settlement negotiations or mediation proceedings." Order on Mot. Clarification 3 [Dkt. #27-1]. "However," she explained, "the Court ultimately referred the matter for mediation to United States District Judge Barbara J. Rothstein, who did issue [three] orders that appear on the docket in this case." *Id.* Those

orders directed the parties to submit directly to Judge Rothstein's chambers memoranda summarizing, *inter alia*, "the settlement history to date, including a summary of any issues that prevented settlement[,] and the parties' current settlement positions." *Id.* at 4. The first order specified that the memoranda were due by noon on March 22, 2013, and "should not be filed through ECF." *Id.* The second and third orders requesting similar memoranda specified that they were "for the Court's eyes only." *Id.*

Soon after receiving clarification from Judge Jackson, the parties filed the cross-motions now pending before this Court. The parties agree that, following clarification, Judge Jackson's order can no longer serve as a basis for the Department's withholding of the documents in question. Their cross-motions thus present, once again, the same "difficult questions" our Circuit left unresolved. Specifically, the Department "moves for summary judgment a second time on the central basis for the Court's prior order, which was not addressed by the D.C. Circuit court: that Local Rule 84.9 prohibits the Department from releasing the requested settlement communications." Def.'s Mem. Supp. Second Mot. Summ. J. 8 ("Def.'s Mem.") [Dkt. #31-1]. Judicial Watch counters that "Local Rule 84.9 does not apply to the eight records being withheld because they were all created prior to the Department entering into the Mediation Program." Pl.'s Mem. Opp'n to Def.'s Second Mot. Summ. J. & Supp. Cross-Mot. Summ. J. 3 ("Pl.'s Mem.") [Dkts. ##32, 33].

## STANDARD OF REVIEW

FOIA requires federal agencies to make certain records publicly available. "The statute gives federal courts jurisdiction to compel production of records if an agency has '(1) improperly (2) withheld (3) agency records.'" *Judicial Watch II*, 813 F.3d at 383

(quoting *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 384 (1980)); *see* 5 U.S.C. § 552(a)(4)(B). An agency may withhold a record if it "fall[s] within one of nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011); *see* 5 U.S.C. § 552(b)(1)-(9). "In addition, withholding a record the disclosure of which a court has enjoined is not 'improper.'" *Judicial Watch II*, 813 F.3d at 383; *accord Fed. Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) ("It is beyond question that a court may issue orders prohibiting disclosure of documents or information." (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "'There simply [is] no discretion for the agency to exercise' in such cases." *Judicial Watch II*, 813 F.3d at 383 (quoting *GTE Sylvania*, 445 U.S. at 386).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

I must resolve two issues on remand. First, I must determine whether the documents sought by Judicial Watch are "written . . . communications made in connection with or during any mediation session" and therefore protected by our confidentiality rules. LCvR

84.9(a)(1); *see Judicial Watch II*, 813 F.3d at 384. If they are, I must determine whether Local Civil Rule 84.9 "resolve[s] the FOIA question," bearing in mind that "local rules do not clearly fit within a recognized FOIA exemption." *Judicial Watch II*, 813 F.3d at 384.

### A.

When this case was last before me, I answered the first question in the affirmative. Although I recognized that "the responsive documents were created *before* the parties were formally ordered into mediation by Judge Jackson," I nevertheless determined that they were "made in connection with" the mediation sessions before Senior Judge Rothstein. *Judicial Watch I*, 65 F. Supp. 3d at 55 (quoting LCvR 84.9(a)(1)). In reaching that conclusion, I relied primarily on the specific factual context of the negotiations in *Holder*. I found it telling both that the eight settlement-related documents sought by Judicial Watch were created "amidst numerous inquiries from Judge Jackson regarding the necessity of referring the case to formal mediation" and that these documents ultimately "became the starting point from which the mediation sessions before Judge Rothstein proceeded." *Id.* I also looked to the judicial policy underlying our confidentiality rules. As I explained then, "the core purpose of Local Rule 84.9 [is] to promote resolution of civil disputes short of litigation." *Id.* at 56. I reasoned that this purpose would be hindered if the Rule were interpreted to allow the "disclosure of sensitive . . . settlement communications between parties" who were preparing for potential mediation. *Id.* Finally, upon reviewing the relevant case law, I concluded that a "narrow interpretation of Local Rule 84.9 [would be] inconsistent with the broad protections this District Court provides for confidential settlement discussions between parties." *Id.* at 55 (collecting cases); *see also Jones v.*

9

*Ashcroft*, 321 F. Supp. 2d 1, 12 (D.D.C. 2004) ("[A]s a matter of public policy, as well as a matter of practice . . . the district judges and magistrate judges of this Court . . . insist that *all* settlement discussions remain confidential[.]" (emphasis added) (quoting *Childers v. Slater*, 1:97-cv-853-RMU/JMF, 1998 WL 429849, at *6 (D.D.C. May 15, 1998))).

I reach the same conclusion again today. Judicial Watch concedes that *Holder* entered the District Court Mediation Program when Judge Jackson referred the case to Senior Judge Rothstein for settlement discussions on March 18, 2013. Pl.'s SMF ¶ 4; Pl.'s Mem. 2. This stipulation is "binding and conclusive" of that fact. *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010). The only remaining question, then, is whether the six letters and two draft settlement agreements prepared by the parties in advance of entering mediation were "made in connection with" any mediation session. LCvR 84.9(a)(1). The record shows that the parties in *Holder* drafted and exchanged these eight documents upon the encouragement of the court to engage in settlement discussions and after having been informed by the court that mediation loomed on the horizon. As if to underscore that point, the court proactively arranged for Senior Judge Rothstein to serve as mediator and informed the parties that she was waiting in the wings if their settlement efforts should fail. Not surprisingly, the parties believed that communications made under these circumstances were and would remain "confidential." Second Joint Status Report 3 (refusing to disclose "the parties' confidential settlement offers"). The reasonable nature of this belief was confirmed when mediation was in fact ordered and Senior Judge Rothstein instructed the parties, consistent with Local Civil Rule 84.6, to submit directly to chambers and "for the

Court's eyes only" mediation statements containing "the settlement history to date." Order on Mot. Clarification 4. On these facts, I conclude that the eight documents sought by Judicial Watch were "made in connection with" the mediation sessions before Senior Judge Rothstein and are therefore protected by Local Civil Rule 84.9.

In reaching this conclusion, I take careful note of the apparent tension our Circuit observed (but did not resolve) between this outcome and Local Civil Rule 84(b). Local Civil Rule 84(b) provides in part that our District's mediation rules "apply only to mediation proceedings that are formally conducted through the United States District Court's Mediation Program." LCvR 84(b). "The United States District Court Mediation Program is administered by the Office of the Circuit Executive for the United States Courts for the District of Columbia Circuit." LCvR 84.1(a). A case enters the Mediation Program when a district "judge issues an order referring the case to the Office of the Circuit Executive." LCvR, App. A, Dispute Resolution Programs at 126; *see also* LCvR 84.4. Judicial Watch argued on appeal, as it does again here, that the "plain language" of Local Civil Rule 84(b) precludes application of Local Civil Rule 84.9 to any written communications made prior to the issuance of an order referring a matter to the Mediation Program. Pl.'s Mem. 3–4. Thus, according to Judicial Watch, the eight settlement-related documents at issue here are unprotected because they "were created before the Department entered into the United States District Court Mediation Program." *Id.* at 6.

There are several problems, however, with Judicial Watch's analysis. To begin with, Judicial Watch reads the first sentence of Local Civil Rule 84(b) in isolation from the rest of that provision. The first sentence, as noted above, states that "[t]hese Rules apply

11

only to mediation proceedings that are formally conducted through the United States District Court's Mediation Program." LCvR 84(b). The next sentence, ignored by the parties, provides that "[n]othing in these Rules shall preclude litigants from independently retaining a private mediator or other ADR professional to facilitate negotiations in their case." *Id.* This second sentence is important because it highlights that the distinction drawn by Local Civil Rule 84(b) is not, as Judicial Watch wishes, a temporal distinction between the time before a case is referred to mediation and the time after a case is referred to mediation, but rather a distinction between cases in our formal Mediation Program and cases in private mediation programs. In other words, Local Civil Rule 84(b) clarifies that our mediation rules do not apply where parties elect to retain a private mediator and to abide by private mediation rules (as in, for example, certain forms of commercial arbitration); but it says nothing to suggest that the timing of a referral order may leave some communications unprotected. Although Local Civil Rule 84(b) has not been construed in any opinion of which the Court is aware, interpreting the rule as a distinction between private and court-supervised mediation is consistent with the general practice in this District of applying our confidentiality rules to *any* mediation conducted under the auspices of the court—even those not referred to the Circuit Executive as set forth in Local Civil Rule 84.4.[4]

---

[4] In such cases, a referral order assigns the case directly to a magistrate judge to facilitate settlement discussions, without reference to the District Court Mediation Program or to the Circuit Executive. *See, e.g.,* Order of Referral, *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 1:00-cv-1401-PLF (D.D.C. July 11, 2006), ECF Nos. 102, 103; Scheduling and Procedures Order, *Williams v. Johanns*, 1:03-cv-2245-CKK (D.D.C. July 20, 2005), ECF No. 35; Order Referring Action, *Cooper v. First Gov't Mortg. & Inv'rs Corp.*, 1:00-cv-536-RMU (D.D.C. Oct. 26, 2000), ECF No. 25. Then, if questions of confidentiality arise (as they often do), the court applies Local Civil Rule 84.9. *See Ascom Hasler Mailing Sys., Inc. v. U.S.*

Even more problematic for Judicial Watch is Local Civil Rule 84.9's express contemplation of communications made outside of mediation. As noted above, the Rule prohibits disclosure of "written . . . communications made in connection with or during any mediation session." LCvR 84.9(a)(1). The words "or during" indicate that the phrase "in connection with" encompasses communications made outside of (not "during") a mediation session. It is plain that in many instances some such communications will be prepared before any particular mediation session, and indeed, our published guidance recognizes this possibility and assures litigants that "[d]ocuments generated for the mediation are . . . confidential." LCvR, App. A, Dispute Resolution Programs at 129. It is also true, due to the nature and speed of district court litigation, that in some cases settlement-related documents may need to be prepared before the referral order is issued. Indeed, *Holder* is a perfect example.

In that case, Judge Jackson urged the parties to "speed up" their exchange of negotiation letters. Tr. of 1/10/2013 Status Conf. 10:12. Then, when the referral order was entered, Judge Rothstein directed the parties to submit, in less than four days, memoranda summarizing "the parties' current settlement positions" and "any issues that prevented

---

*Postal Serv.*, 267 F.R.D. 9, 12 (D.D.C. 2010) (analyzing whether expert report used information obtained during settlement discussions in violation of LCvR 84.9(a)(1), (3)); *Williams v. Johanns*, 529 F. Supp. 2d 22, 23 & 23 n.1 (D.D.C. 2008) (sanctioning counsel for violating confidentiality order entered pursuant to LCvR 84.9(a)(1), (b)); *Cooper v. First Gov't Mortg. & Inv'rs Corp.*, 216 F.R.D. 126, 127 n.1 (D.D.C. 2002) (explaining court "struck the opposition from the record of this case because it contains details of confidential settlement discussions"). *But see Franklin-Mason v. Dalton*, 1:96-cv-2505-RWR/JFM, 2006 WL 825418, at *3 n.5 (D.D.C. Mar. 21, 2006) ("Local Civil Rule 84.9 . . . speaks only to those proceedings which take place under the auspices of the Court's Mediation Program and not to settlement discussions that take place before a judge."), *report and recommendation rejected sub nom. Franklin-Mason v. Penn*, 616 F. Supp. 2d 97 (D.D.C. 2009). Whatever other problems this practice may create, they are not implicated here in light of the parties' stipulation that this case entered our formal Mediation Program. Def.'s SMF ¶ 12; Pl.'s SMF ¶ 4; Pl.'s Mem. 2.

settlement." Order on Mot. Clarification 4. Obviously, meeting that deadline would not have been possible if the parties were not already engaged in an exchange of letters as encouraged by the court. Given such realities, it is not surprising that Judicial Watch is unable to identify a single case holding Local Civil Rule 84.9 inapplicable to a settlement-related document due to the timing of its creation.[5] Moreover, in this case, it is clear that the eight documents at issue were created following Judge Jackson's encouragement to engage in settlement discussions and after her admonition that she was prepared to order formal mediation. It is thus not necessary to define a precise temporal window for the phrase "made in connection with." On this record the documents plainly fall within it.

Finally, I am unpersuaded by Judicial Watch's *reductio ad absurdum* insisting that if these eight documents are protected by Local Civil Rule 84.9, so too would any "newspaper article" submitted to a mediator. Pl.'s Mem. 5. The argument misunderstands the significance of the *Holder* parties' submission of the draft settlement agreements and position letters to Senior Judge Rothstein. That submission did not somehow insulate otherwise public documents from disclosure; it simply helped to show, on the facts presented in this case, that the documents were confidential and generated in connection with the mediation. A newspaper article would not be protected by Local Civil Rule 84.9 because it would be "made" in connection with a publishing enterprise and not in connection with any mediation session. Thus, the straw man erected by Judicial Watch is easily toppled.

---

[5] Although Judicial Watch purports to cite relevant case law in support of its position, Pl.'s Mem. 4, in each of the cited cases, the court held the relevant communications *protected* by Local Civil Rule 84.9.

## B.

Because I hold that the eight settlement-related documents sought by Judicial Watch are protected by Local Civil Rule 84.9, I must also determine whether the Rule "resolve[s] the FOIA question." *Judicial Watch II*, 813 F.3d at 384. FOIA, as previously explained, "gives federal courts jurisdiction to compel production of records if an agency has '(1) improperly (2) withheld (3) agency records.'" *Judicial Watch II*, 813 F.3d at 383 (quoting *GTE Sylvania*, 445 U.S. at 384); *see* 5 U.S.C. § 552(a)(4)(B). An agency may withhold a record if it "fall[s] within one of nine exemptions." *Milner*, 562 U.S. at 565; *see* 5 U.S.C. § 552(b)(1)-(9). "In addition, withholding a record the disclosure of which a court has enjoined is not 'improper': 'There simply [is] no discretion for the agency to exercise' in such cases." *Judicial Watch II*, 813 F.3d at 383 (quoting *GTE Sylvania*, 445 U.S. at 386).

The Department concedes that the eight records at issue in this case do not fit within any of FOIA's nine statutory exemptions.[6] That leaves as the relevant inquiry the appropriateness of withholding the records pursuant to Local Civil Rule 84.9. The parties agree that "the proper test for determining whether an agency improperly withholds records

---

[6] This concession is surprising. FOIA's disclosure requirement "does not apply to matters . . . specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Although rules promulgated by courts are not "statutes," *see Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 951–52 (D.C. Cir. 1979) (holding Federal Rule of Civil Procedure 26(c) not a statute), Local Civil Rule 84.9 implements a statutory command that "each district court shall, by local rule . . . provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications," 28 U.S.C. § 652(d). That command appears to place Local Civil Rule 84.9 on a plane distinct from other rules promulgated pursuant to the Rules Enabling Act. Indeed, this Court has previously held that a confidential letter sent to a mediator was within the ambit of § 652(d) and therefore exempt from FOIA. *See Yelder v. U.S. Dep't of Def.*, 577 F. Supp. 2d 342, 346–47 (D.D.C. 2008). And it is likewise not unusual for administrative agencies to promulgate rules designating certain types of materials as presumptively within the protection of a statutory exemption from FOIA. *See, e.g.*, 47 C.F.R. § 0.457(c). Given that our Circuit expressed interest in the merits of this approach on appeal, *see* Oral Arg. Recording Sept. 25, 2015, 1:04–2:30, 4:15–6:10, it is curious that the parties failed to analyze it on remand.

[subject to a local rule] is whether the [rule], like an injunction, *prohibits* the agency from disclosing the records." *Morgan*, 923 F.2d at 197 (citing *GTE Sylvania*, 445 U.S. at 386–87); *see also Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 335 (D.D.C. 2015) (collecting cases applying the "core holding" of *GTE Sylvania* to find agency records properly withheld pursuant to injunctions, sealing orders, consent orders, protective orders, and local rules). In the context of applying this test to a sealing order, our Circuit has said that an agency may carry its burden of proof to show that withholding is proper "by referring to, *inter alia*: (1) the sealing order itself; (2) extrinsic evidence, such as transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal; (3) sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals; or (4) the court's general rules or procedures governing the imposition of seals." *Morgan*, 923 F.2d at 198 (footnote omitted).

Applying the *Morgan* factors in this case shows that the Department properly withheld the eight settlement-related documents requested by Judicial Watch. Local Civil Rule 84.9 unambiguously "prohibits . . . all counsel and parties . . . from disclosing any written or oral communications made in connection with . . . any mediation session." LCvR 84.9(a)(1). The Rule further provides, subject to six exceptions not relevant here, that "[i]nformation acquired through mediation shall not be used for any purpose, including impeachment, in any pending or future proceeding in this or any other court or forum." LCvR 84.9(a)(3). I have already determined, *supra*, that the eight documents at issue here are within the ambit of the Rule. These broad prohibitions are therefore binding on the

Department. "Because a district court's local rules 'have the force of law,'" *Texas*, 798 F.3d at 1114 (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)), "the [Department]—like all lawyers and litigants—is 'duty bound to comply with them,'" *id.* (quoting *In re Jarvis*, 53 F.3d 416, 422 (1st Cir. 1995)).

Extrinsic evidence confirms the ironclad nature of the Department's obligation. This District assures litigants that participation in our Mediation Program will allow them "to avoid a public airing of their dispute" because "[a]ll mediation proceedings are confidential" and all "[d]ocuments generated for the mediation are also confidential." LCvR, App. A, Dispute Resolution Programs at 127, 129. This incentive is not merely an offer to prevent awkward glances and sheepish smiles! Rather, it reflects Congress's understanding that "providing for the confidentiality of alternative dispute resolution" and "prohibit[ing] disclosure of confidential dispute resolution communications," 28 U.S.C. § 652(d), is essential to "present[ing] quality alternatives to expensive federal litigation" and "address[ing] the problem of the high caseloads burdening the federal courts," H.R. Rep. No. 105-487, at 5 (1998). Confidentiality contributes to these goals because it gives parties freedom to engage in a frank exchange of information without fear that their disclosures will be used against them in present or future litigation. "[T]he traditional practices of lawyers during settlement discussions" provide other extrinsic indication that "it [is] reasonable for [a party] to believe that information it made available to its opponent . . . solely for the purpose of mediation [will] be kept confidential and be used only for the purposes of that mediation." *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 9, 12 (D.D.C. 2010). Since settlement is generally the preferred manner by which

to dispose of politically charged struggles between the legislative and executive branches, ensuring confidentiality in that context is even more important to facilitating a mutually agreeable outcome. No wonder the *Holder* parties believed their communications were confidential when they were encouraged by the court to settle !

Similar cases also support the conclusion that withholding documents pursuant to Local Civil Rule 84.9 is proper. Courts in this District have held counsel in contempt for disclosing in a public forum information obtained through mediation. *See, e.g., Williams v. Johannes*, 529 F. Supp. 2d 22, 23 & 23 n.1 (D.D.C. 2008) (holding counsel in civil contempt for filing "on the public docket" submission containing "statements made during the course of a mediation session"). Yet, as our Circuit and the Supreme Court have made clear, "the FOIA does not 'require an agency to commit contempt of court in order to release documents.'" *Morgan*, 923 F.2d at 197 (quoting *GTE Sylvania*, 445 U.S. at 387). It cannot be, then, that FOIA requires the Department to disclose documents made in connection with mediation at risk of being found in civil contempt.

Finally, this District's general mediation rules and procedures also reinforce the conclusion that withholding is proper. For example, Local Civil Rule 84.9 authorizes mediators to obtain signed confidentiality agreements from mediation participants but expressly provides that our "confidentiality requirements . . . apply regardless of whether a confidentiality agreement is signed." LCvR 84.9(b). This procedure recognizes the practical value in some cases of using confidentiality agreements to impress our requirements on parties, while at the same time taking care to avoid creating a negative inference in favor of disclosure in cases where the mediator does not believe such

agreements provide added value. Similarly, Local Civil Rule 84.6 requires mediation participants to submit "confidential mediation statement[s]" outlining their settlement positions "[n]o later than seven days prior to the first mediation session." LCvR 84.6(a). This Rule, in other words, requires litigants to create documents in advance of mediation which, by definition, are "confidential" and within the protection of Local Civil Rule 84.9, but, in cases involving federal agencies, are outside the protection of any FOIA exemption because the documents have left the executive branch. *See* 5 U.S.C. § 552(b)(5) (exempting from disclosure only "inter-agency or intra-agency memorandums or letters"). It is inconceivable that FOIA requires disclosure of such documents created under court order; yet the only basis for protecting them is Local Civil Rule 84.9. In sum, then, after consideration of all four *Morgan* factors, I am persuaded that "FOIA [simply] does not apply to a court's [rule] directing an agency not to reveal the terms of an agreement crucial to the settlement of an action." *Ernst & Ernst*, 677 F.2d at 232.

Judicial Watch attempts to fight the outcome of the *Morgan* analysis by asserting that Local Civil Rule 84.9 is concerned only with disclosure occurring amidst "a particular suit between particular litigants" in order "to prevent potential prejudice that may occur if the overseeing judge has access to the information" shared in mediation. Pl.'s Mem. 7–8. To be sure, protecting the impartiality of the presiding judge is one reason for keeping mediation confidential. *See Davis v. Nat'l Council of Negro Women, Inc.*, 821 F. Supp. 2d 262, 268 (D.D.C. 2011) (recognizing as attorney "misconduct" the "disclosing [of] confidential settlement discussions in public filings available to the merits judge"). But it is not the only reason. Keeping mediation confidential is an incentive for parties to

19

mediate. *See* LCvR, App. A, Dispute Resolution Programs at 127 (explaining the "[n]eed for privacy" is a reason to mediate). It also broadens the scope of potential solutions. If the prohibition on disclosure were immediately lifted when mediation or litigation concluded, parties that frequently find themselves in court (such as the Government) would be limited in their ability to explore creative solutions in individual cases, and one of the key benefits of mediation would be lost. *See id.* at 125 (explaining mediation is "[m]ore creative" than litigation and "[b]etter able to address the underlying interests of all parties"). In any event, the text of the Rule forecloses Judicial Watch's argument. Local Civil Rule 84.9 expressly prohibits "use[] for any purpose . . . in any pending or future proceeding in this or any other court or forum." LCvR 84.9(a)(3).

## CONCLUSION

For the foregoing reasons, the Court will GRANT the Department's Second Motion for Summary Judgment and DENY Judicial Watch's Cross-Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge